*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. E. HANNING, Minor.

UNPUBLISHED
May 13, 2025
11:33 AM

No. 371904
Branch Circuit Court
Family Division
LC No. 23-006525-NA

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating his parental rights to his minor child, REH, under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication still exist with no reasonable likelihood of being rectified within a reasonable time), (c)(*ii*) (other conditions exist causing child to come within the court's jurisdiction with no reasonable likelihood of being rectified within a reasonable time), and (j) (reasonable likelihood that child will be harmed if returned to parent's home). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after hospital staff reported to the Michigan Department of Health and Human Services (DHHS) that REH was born with symptoms of withdrawal and that her mother tested positive for amphetamines, methamphetamines, and marijuana. DHHS petitioned to remove REH, citing her mother's history of drug use and prior terminations of her parental rights to two of her other four children. The petition further alleged that, although the mother was married to another man, respondent was REH's putative biological father.

After a DNA test confirmed respondent's paternity, the trial court released REH into his care because he was not a respondent in the original petition. However, REH was removed four

---

[1] REH's mother was also a respondent in this case whose parental rights were terminated, but she is not a party to this appeal.

-1-

days later after DHHS filed a supplemental petition alleging that respondent tested positive for amphetamine, methamphetamine, and THC. The petition also alleged that respondent was arrested on an outstanding warrant for methamphetamine use. Respondent was sentenced to serve 12 months' probation for his outstanding drug charge, but was later incarcerated for violating his probation after testing positive for amphetamine and methamphetamine again.

DHHS petitioned to terminate the parental rights of both parents. While the trial court terminated REH's mother's parental rights at the first termination hearing, it declined to terminate respondent's parental rights because there was not clear and convincing evidence that he was given a reasonable opportunity to rectify the conditions which led to REH's removal. It again declined to terminate respondent's parental rights at a second hearing in order to give respondent time to provide proof of employment and parenting class participation. The trial court finally terminated respondent's parental rights at the third termination hearing. This appeal followed.

## II. NATIVE AMERICAN HERITAGE INQUIRY

Respondent first argues that the trial court erred by failing to inquire about REH's Native American heritage. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Respondent never raised this argument in the trial court. Thus, this issue is unpreserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Accordingly, we review his argument for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* (quotation marks citation omitted).

## B. ANALYSIS

Both the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*, require providing an Indian child's tribe with notice of any involuntary proceedings seeking termination of parental rights when the trial court "*knows or has reason to know*" that an Indian child is involved. 25 USC 1912(a); MCL 712B.9(1) (emphasis added). Under the MIFPA:

> (4) Circumstances under which a court, the department, or other party to a child custody proceeding has reason to believe a child involved in a child custody proceeding is an Indian include, but are not limited to, any of the following:
>
> (a) Any party to the case, Indian tribe, Indian organization, or public or private agency informs the court that the child is an Indian child.

(b) Any public or state-licensed agency involved in child protection services or family support has discovered information that suggests that the child is an Indian child.

(c) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child.

(d) The residence or the domicile of the child, his or her biological parents, or the Indian custodian is known by the court to be or is shown to be a predominantly Indian community.

(e) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child. [MCL 712B.9(4).]

The Michigan court rules also require the trial court to inquire at the preliminary hearing "if the child or either parent is a member of an Indian tribe." MCR 3.965(B)(2). In addition, the federal rules require state courts to "ask each participant in an emergency or voluntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." 25 CFR 23.107(a). But if no Indian child is involved in the termination proceedings, any notice violation under ICWA is harmless. *In re Morris*, 491 Mich 81, 120-121; 815 NW2d 62 (2012).

At the initial preliminary hearing, REH's mother identified respondent as REH's biological father. The trial court asked her if any of REH's family members were part of an Indian tribe. She responded: "No." Respondent does not challenge this statement on appeal. Indeed, respondent is careful not to assert that REH is a member of an Indian tribe or even an Indian child as defined by the ICWA. Instead, respondent's entire arguments consists of the following two sentences: "At no time, either at the preliminary hearing for Appellant on March 28, 2023, or any other time, did that inquiry occur. For that reason, conditional reversal is warranted and remand to the trial court. *In re IEM*, 233 Mich App 438; 592 NW2d 751 (1999)." Respondent's conclusionary argument fails for two reasons.

First, respondent's reliance on *IEM* is misplaced because this Court in *IEM* conditionally *affirmed* the termination order. *Id*. at 456. Thus, respondent's legal proposition lacks support. Regardless, *IEM* was expressly overruled by our Supreme Court in *Morris*, 491 Mich at 121. In *Morris*, the parents repeatedly informed the trial court that they had Indian heritage. *Id*. at 109. Yet, the trial court never provided notice as required by the ICWA, or conclusively resolved whether the child had Indian heritage. *Id*. Accordingly, our Supreme Court held that conditional reversal is the appropriate remedy when a trial court fails to provide notice under the ICWA despite knowing or having reason to know that a child involved in the termination proceedings had Indian heritage. *See id*. at 108-109, 120-121.

Second, unlike the court in *Morris*, the trial court in this case did not know or have any reason to know that REH had any Indian heritage. REH's mother expressly denied having any Indian heritage, and respondent has cited to no such evidence before the trial court or on appeal. Although 25 CFR 23.107(a) and MCR 3.965(B)(2) required the trial court to ascertain whether REH or respondent was a member of an Indian tribe at the preliminary hearing, its failure to do so

is harmless because there is no indication that REH was an Indian child. *Morris*, 491 Mich at 120-121. Accordingly, respondent is not entitled to conditional reversal.

## III. STATUTORY GROUNDS

Respondent next argues no statutory grounds existed warranting termination of his parental rights. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's finding of statutory grounds for termination for clear error. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

## B. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights[.]" *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Although the trial court terminated respondent's parental right under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), respondent only challenges the court's findings with respect to MCL 712A.19b(3)(c)(*i*) on appeal.[2] MCL 712A.19b(3)(c)(*i*) provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[2] We note that, because respondent fails to challenge the trial court's findings under MCL 712A.19b(3)(c)(*ii*) and (j), he has abandoned any claim of error as to these subsections on appeal. *In re JS & JM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000) ("The failure to brief the merits of an allegation of error is deemed an abandonment of the issue."). Thus, because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *In re Ellis*, 294 Mich App at 32, and respondent has not effectively challenged all the statutory grounds used by the trial court, even if respondent were to succeed on his claim of error on appeal, it does not entitle him to relief. Regardless, as will be discussed below, because the trial court did not err in finding that MCL 712A.19b(c)(*i*) was satisfied, defendant is still not entitled to relief.

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The determination of what constitutes a reasonable time includes analyzing how long the parent will take to improve the conditions as well as how long the child can wait for the improvements to occur. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

Respondent was first notified about this case in March 2023. REH was removed from his care after only four days because he tested positive for amphetamine, methamphetamine, and THC. The trial court took jurisdiction of REH in April 2023. It declined to terminate respondent's parental rights at two subsequent termination hearings to give him more time before ultimately terminating respondent's parental rights in July 2024. Respondent was given more than a year to rectify his substance-use barrier. Yet, in this time, he was incarcerated for violating his probation for drug use, managed to produce and consume alcohol in while incarcerated despite its prohibition, tested positive for methamphetamine less than a month after being released, and missed half of his scheduled drug screens between his release and the final termination hearing. Respondent argues that the trial court only focused on the fact that he failed to rectify the conditions as of the date of the final termination trial, instead of focusing on how long it would take for him to rectify the conditions down the road. But respondent's argument fails to recognize that his failure to rectify the conditions which led to the adjudication was demonstrative of the unlikelihood that he would be able to do so within a reasonable time frame, given REH's age.

By contrast, REH was doing well in her foster-care placement and her foster parents were interested in adopting her. According to the caseworker, REH would hyperventilate and "freak[] out" on the way to parenting time visits with respondent, and the trial court's ordered bonding assessment indicated that REH did not feel safe with respondent. By the time of respondent's final termination hearing, REH had been in care for one-and-a-half years—essentially her entire life. Given these factors, the trial court did not clearly err in finding that respondent had failed to rectify the conditions which led to the adjudication and would be unable to do so within a reasonable time given REH's age. MCL 712A.19b(3)(c)(*i*).

Affirmed.

/s/ Thomas C. Cameron
/s/ Adrienne N. Young